FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 11, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ERIC B.,[1]

              Plaintiff,

      v.

ANDREW M. SAUL, the Commissioner
of Social Security,

              Defendant.

No.    4:19-CV-5165-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

      Before the Court are the parties' cross summary-judgment motions.[2]

Plaintiff Eric B. appeals the denial of benefits by the Administrative Law Judge

(ALJ). He alleges the ALJ erred by 1) improperly determining that his

impairments did not meet or equal Listing 8.05; 2) improperly weighing the

medical opinions; 3) discounting Plaintiff's symptom reports; and 4) improperly

assessing Plaintiff's residual functional capacity. In contrast, Defendant

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by

first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 11 & 12.

Commissioner of Social Security asks the Court to affirm the ALJ's decision finding

Plaintiff not disabled. After reviewing the record and relevant authority, the Court

denies Plaintiff's Motion for Summary Judgment, ECF No. 11, and grants the

Commissioner's Motion for Summary Judgment, ECF No. 12.

## I.  Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an

adult claimant is disabled.[3] Step one assesses whether the claimant is currently

engaged in substantial gainful activity.[4] If the claimant is engaged in substantial

gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to

step two.[6]

Step two assesses whether the claimant has a medically severe impairment,

or combination of impairments, which significantly limits the claimant's physical

or mental ability to do basic work activities.[7] If the claimant does not, benefits are

denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in light of the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

---

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.  Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of June 15, 2015.[18] His claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Jesse Shumway.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since June 15, 2015, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: urticaria pigmentosa (UP), carpal tunnel, major depressive disorder, generalized anxiety disorder, and unspecified trauma-related disorder;

---

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 227-39.

[19] AR 123-26 & 131-36.

[20] AR 35-74.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work except:

  > He cannot work outdoors; he can tolerate no exposure to extreme cold or heat; he cannot have concentrated exposure to wetness or humidity; he is limited to simple, routine tasks with a reasoning level of 2 or less; and he needs a routine, predictable work environment with no more than occasional, simple changes.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as marker, hand packer/inspector, and garment folder.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the testifying opinion of Jack Lebaeu, M.D. and the examining opinion of Greg Sawyer, M.D., Ph.D.;

- partial weight to the nonreviewing opinions of Roy Brown, M.D., Steven Haney, M.D., and Rita Flanagan, M.D.;

---

[21] AR 12-34.

- little weight to the examining opinion of N.K. Marks, Ph.D. and the treating opinion of Michelle Womack, PA-C; and

- no weight to PA-C Womack's 2009 treating opinion.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.   Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

---

[22] AR 24-26.

[23] AR 23-24.

[24] AR 1-6.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

---

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

# IV.    Analysis

## A.    Step Three (Listings): Plaintiff fails to establish error.

Plaintiff contends the ALJ erred by finding that Plaintiff's skin disorder did not meet or medically equal Listing 8.05, either singly or in combination.

Listing 8.05 (dermatitis) involves "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed."[33] "Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation."[34] Examples of a very serious limitation include skin lesions 1) that interfere with the motion of the joints and seriously limit the use of more than one extremity; 2) on the palms of both hands that very seriously limit your ability to do fine and gross motor movements; and 3) on the soles of both feet that very seriously limit the ability to ambulate.[35] Equivalence "must be based on medical findings" and a "generalized assertion of functional problems" is insufficient.[36]

Plaintiff accurately characterizes the ALJ's finding as to this particular listing as brief: "The severity of [Plaintiff's] skin disorder does not meet or

---

[33] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 8.05.

[34] *Id.* § 8.00.C.1.

[35] *Id.* § 8.00.C.1.a-c.

[36] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

medically equal any listing in section 8.00 (Skin Disorders.)."[37] However, the ALJ's discussion about Plaintiff's skin disorder later in the opinion permits the Court to review the ALJ's reasons for this finding.[38] The treatment notes documenting physical examinations reveal rashes that were located in one to three body areas. While these could be deemed to involve multiple body parts, there is substantial evidence supporting a finding that the rashes did not result in a "very serious limitation" because Plaintiff was not observed with serious loss of use of an extremity, gait abnormalities, or serious limitations with his abilities to do fine or gross motor movements.[39] The ALJ's finding that Plaintiff did not meet or medically equal any listing is rational and supported by substantial evidence.

---

[37] AR 18.

[38] *See Bray v. Comm'r of Soc. Sec. Adm.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (recognizing that the ALJ's decision must be analyzed based on his reasoning and findings and "not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

[39] *See, e.g.*, AR 361 (noting normal sensation to light touch in upper extremities, 5/5 manual muscle testing, except for give-way weakness on the right, and positive Tinel's test at the right wrist, resulting in moderate bilateral median nerve compromise at or near the wrist); AR 466 (no sensory or motor deficits), AR 563 (normal range of motion, no edema, normal reflexes, and no sensory deficit); & AR

**B.      Medical Opinions: Plaintiff fails to establish consequential error.**

Plaintiff challenges the ALJ's consideration of the opinions of Dr. Sawyer, Dr. Flanagan, Dr. Haney, Dr. Marks, PA-C Womack, Dr. Eisenhauer, and Dr. Labeau. The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[40] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a non-treating physician.[41] When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[42] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source may be rejected for specific and germane reasons supported by substantial

---

658 & 665 (normal range of motion of extremities and intact and symmetric neurology).

[40] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[41] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[42] *Lester*, 81 F.3d at 830.

evidence.[43] The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.[44]

As discussed below, the Court finds Plaintiff fails to establish that the ALJ consequentially erred when weighing the medical opinions.

1.     Dr. Sawyer, Dr. Haney, and Dr. Flanagan

In January 2016, Dr. Sawyer conducted a psychiatric evaluation of Plaintiff.[45] He observed Plaintiff to be anxious and nervous with a "motor behavior [that] is hyperalert and somewhat agitated with a tremor but he settled into the evaluation and this became normal over the course of the evaluation."[46] Similarly, Dr. Sawyer noted that Plaintiff was "a little more anxious and labile" at the beginning of the session" but "as he moved through his anxiety his depression emerged underneath it."[47] Dr. Sawyer diagnosed Plaintiff with major depressive episodes, single episode severe with psychotic features. Dr. Sawyer opined that Plaintiff's depression may improve with more time on medication and mental health treatment. However, the "likelihood of recovery is going to be based as much

---

[43] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[44] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[45] AR 368-75.

[46] AR 372.

[47] AR 373.

or more on the resolution of his skin condition as anything else."[48] Dr. Sawyer

opined that due to Plaintiff's difficulty with digit recollection that he would have

difficulty sustaining concentration and persisting in work-related activity at a

reasonable pace and that Plaintiff would have difficulty dealing with the usual

stresses encountered in the workplace as stressors appear to exacerbate his skin

condition and would make it somewhat difficult for him in a workplace.

The ALJ gave great weight to Dr. Sawyer's opinion because it was the most

thorough psychiatric evaluation in the record and generally consistent with the

examination findings and the longitudinal record.[49]

As to Dr. Haney and Dr. Flanagan, they reviewed the medical documents

then of record and both opined that Plaintiff:

> retain[ed] the ability to carry out more than one or two step
> instructions. His depression with accompanying low energy would
> interfere with his ability to maintain regular attendance and to
> persist through a normal workweek. However, his depression is not so
> severe that it would prevent him from being able to sustain more than
> one or two step instructions in an acceptable manner.[50]

The ALJ gave partial weight to the opinions of Dr. Haney and Dr. Flanagan.[51] The

ALJ found their opinions were generally consistent with the longitudinal record

---

[48] AR 374.

[49] AR 26.

[50] AR 94 & 120.

[51] AR 24.

but added slightly greater restrictions to the RFC than as recommended by Dr. Haney and Dr. Flanagan.

Plaintiff argues that these three opinions from Dr. Sawyer, Dr. Haney, and Dr. Flanagan are consistent with each other and when they are *all* given great weight, Plaintiff is unable to persist through a normal workday and workweek. Plaintiff's argument fails for two reasons. First, the ALJ reasonably interpreted Dr. Sawyer has opining that Plaintiff has the ability to sustain work if he is limited to simple, routine tasks with a reasoning level of two or less and a routine, predictable work environment with no more than occasional, simple changes— consistent with the limitations set forth in the RFC. Second, the ALJ reasonably added the limitation that Plaintiff must have a routine, predictable work environment with no more than occasional, simple changes to the one-to-two-step-instruction limitation proposed by Dr. Haney and Dr. Flanagan.[52] Plaintiff fails to establish that the ALJ erred in his consideration of these three opinions.

2.    Dr. Marks

In March 2017, Dr. Marks conducted a psychological evaluation of Plaintiff.[53] Dr. Marks diagnosed Plaintiff with depression and anxiety. She found

---

[52] AR 94. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

[53] AR 473-78.

that Plaintiff was in the extreme range of depression and severe range of anxiety. She opined that Plaintiff was markedly limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently. In the other work-ability areas, Dr. Marks found that Plaintiff was moderately, mildly, or not affected.

The ALJ gave little weight to Dr. Marks' opinion for several reasons.[54] First, the ALJ discounted Dr. Marks' opinion because it was based on a cursory examination performed for a Washington benefits program, which the ALJ deemed to have less stringent requirements than the federal social-security requirements. The ALJ's finding in this regard offers an insufficient explanation to permit the Court to assess whether this finding is rational and supported by substantial evidence.[55] The ALJ does not identify either 1) how the state-benefit requirements

---

[54] AR 24-25.

[55] *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding); *Blakes v. Barnhart,* 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the

are less than federal-benefit requirements as to the information provided by Dr. Marks or 2) how Dr. Marks' examination was cursory. Nor was it legitimate for the ALJ to discount Dr. Marks' consultative examination for being cursory while giving great weight to Dr. Eisenhauer's reviewing opinion.[56] However, these errors are harmless because the ALJ provided additional reasons for discounting Dr. Marks' opinion that were specific, legitimate, and supported by substantial evidence.[57]

The ALJ also discounted Dr. Marks' opinion because it was a check-box opinion with little supporting narrative explanation. Individual medical opinions are preferred over check-box reports.[58] Although Dr. Marks conducted a clinical interview and a mental status examination, the "checked" entries are fairly normal

_____

evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.")

[56] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

[57] The ALJ need only have provided specific and legitimate reasons for discounting Dr. Marks' opinion because Dr. Marks' marked restrictions were inconsistent with Dr. Sawyer's more moderate restrictions.

[58] *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996); *Bray*, 554 F.3d at 1228 (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

other than indicating that Plaintiff had a depressed and anxious mood resulting

from his hopelessness about the future, being focused on the past, feeling punished,

self-dislike and self-criticism, negative changes in his sleeping pattern, inability to

relax, and fear of the worst happening, losing control, and dying. The ALJ

rationally determined that these checked "feelings" contributing to his depression

and anxiety inadequately explained Dr. Marks' marked limitations, particularly in

light of the checked boxes indicating that Plaintiff's speech was well organized and

progressive; that he was cooperative, open, and with good eye contact; that his

immediate and working memory and memory for simple directives were within

normal limits; and his concentration was adequate for the appointment.

In addition, the ALJ's decision to discount Dr. Marks' opinion because it was

internally inconsistent with the fairly normal observations is a rational finding

supported by substantial evidence. [59] Although Plaintiff's mood was anxious and

depressed, his concentration was within normal limits for the appointment. The

ALJ rationally found that Dr. Marks' noted normal observations were inconsistent

with her overall marked severity rating.

_____

[59] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is

evaluated as to the amount of relevant evidence that supports the opinion, the

quality of the explanation provided in the opinion, and the consistency of the

medical opinion with the record as a whole; *Orn*, 495 F.3d at 631 (same).

Finally, the ALJ found Dr. Marks' opinion was inconsistent with the longitudinal record, which contained treatment notes indicating fairly normal psychiatric observations[60] While there are treatment notes that indicate that Plaintiff was in distress due to pain, emotional, and frustrated due to his physical conditions, the ALJ rationally found that the longitudinal treatment notes indicated fairly consistent normal psychiatric observations.[61]

Plaintiff failed to establish error as to the ALJ's weighing of Dr. Marks' opinion.

3.    <u>PA-C Womack</u>

In June 2016, PA-C Womack, one of Plaintiff's treating providers, completed a functional report.[62] PA-C Womack opined that Plaintiff would need to lie down during the day for a "few minutes or hours," that some of his medications may cause drowsiness, and that his prognosis was good, but that Plaintiff would miss four or more days per month due to medical impairments and regular medical appointments.

---

[60] *See Lingenfelter*, 504 F.3d at 1042.

[61] AR 353-54 (Nov. 2015: well appearing, in no acute distress; normal mood, affect, memory, and judgment); AR 434-35 (Dec. 8, 2015: same); AR 431-32 (March 10, 2016: same); AR 465 (June 2016: alert, cooperative, oriented, mood and affect appropriate); & AR 484 (Sept. 2016: same).

[62] AR 469-70.

1

2   The ALJ gave little weight to PA-C Womack's opinion for several reasons.

3   First, the ALJ found that PA-C Womack's opinion consisted merely of checked

4   boxes with little narrative explanation. An ALJ may permissibly reject check-box

5   reports that do not contain any explanation of the bases for their conclusions.[63]

6   However, if treatment notes are consistent with the opinion, a check-box report

7   may not automatically be rejected.[64] Here, the ALJ accurately found that PA-C

8   Womack's opinion contained little explanation. Plaintiff highlights that PA-C

9   Womack's opinion was based also on the medical records, which included PA-C

10  Womack's treatment records and other consultative or referral reports. Those

11  medical records though, when read cumulatively, support the ALJ's finding that

12  PA-C Womack's opinion that Plaintiff would miss four or more days per month is

13  inadequately supported. The treatment notes typically indicate that Plaintiff was

14  well appearing, with normal mood, affect, memory, and judgment.[65] That the

-------

[63] *Garrison*, 759 F.3d at 1014 n.17.

[64] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

[65] *See, e.g.*, AR 366-67 (June 23, 2015: well appearing, in no acute distress; normal mood, affect, memory, and judgment; positive Tinel's and Phalen's); AR 363-64 (Aug. 13, 2015: well appearing, in no distress; normal mood, affect, memory, and judgment; faintly erythema macular lesions of various sizes and smooth borders spread across back and abdominal); AR 358-59 (Oct. 8, 2015: same, except only two small lesions

treatment records and received reports are inconsistent with PA-C Womack's opinion is a germane reason to discount the opinion.[66]

Second, the ALJ discounted PA-C's Womack's opinion because the opinion was inconsistent with the unremarkable physical findings throughout the record. Whether a medical opinion is consistent with the longitudinal record is a factor for the ALJ to consider.[67] Although the ALJ does not discuss in his paragraph pertaining to PA-C Womack what the "unremarkable physical findings" were, the ALJ's analysis and findings throughout his decision allow the Court to meaningfully review the ALJ's finding in this regard. Plaintiff complained of extensive pain and fatigue, but there were no noted observations of an impaired gait and only a single reference to very minimally reduced motor strength in his

_____

with small suture in each); AR 355-56 (Oct. 2015: Plaintiff is emotional and frustrated and has erythema scaly lesions on arms bilaterally); AR 353-54 (Nov. 2015: well appearing, in no acute distress; normal mood, affect, memory, and judgment; no lesions or rashes); AR 434-35 (Dec. 8, 2015: same); & AR 431-32 (March 10, 2016: same).

[66] *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.").

[67] *See Lingenfelter*, 504 F.3d at 1042.

right hand in the medical records.[68] Based on the lack of objective measures or observed limitations resulting from the urticaria pigmentosa (UP), the ALJ rationally found PA-C Womack's opinion that Plaintiff would miss four or more days per month of work inconsistent with the unremarkable physical findings. This was a germane reason to discount PA-C Womack's opinion.

      4.   <u>Dr. Eisenhauer</u>

In May 2017, Dr. Eisenhauer reviewed Dr. Marks' report.[69] Dr. Eisenhauer found that Plaintiff's "emotional responses and mental condition are primarily responses to his physical compromise. The psychological conditions themselves do not really impose marked limitations on his functioning. Only moderate limitations are supportable secondary to psych[ological]."[70]

The ALJ gave great weight to Dr. Eisenhauer's opinion.[71] Plaintiff argues that the ALJ's weighing of Dr. Eisenhauer's "moderate" opinion was impacted by the ALJ's failure to consider each of the 20 C.F.R. §§ 404.1527(c) and 416.927(c) factors, including whether the source met Plaintiff and the source's specialization. An ALJ must evaluate every medical opinion received according to the factors set forth by the Social Security Administration. But an ALJ is not required to make an

---

[68] *See, e.g.*, AR 368, 379, 389, 399, 406, 412, 466, 485, 505, & 573.

[69] AR 511-12.

[70] AR 512.

[71] AR 25.

express statement that he considered all the factors nor take each factor one-by-one, instead the record must reflect that the ALJ considered whether the opinion was supported by and consistent with the record.[72] Here, the record reflects that the ALJ considered whether Dr. Eisenhauer's "moderate" opinion was supported by and consistent with the record—and the ALJ rationally found that it was given the few observations of any functional limitations. Plaintiff fails to establish error in this regard.

Plaintiff also argues that, even if Dr. Eisenhauer is owed great weight, the opined moderate limitations about performing within a schedule, being punctual, communicating and performing effectively in a work setting, and completing a normal workday or week are consistent with disabling limitations. However, by crafting an RFC that restricts Plaintiff to simple, routine tasks with a reasoning level of 2 or less and a routine, predictable work environment with no more than occasional, simple changes, the ALJ rationally incorporated Dr. Eisenhauer's moderate limitations into the RFC.[73]

---

[72] *Kelly v. Berryhill*, 732 Fed App'x 558, 562-63 n.4 (9th Cir. May 1, 2018) (unpublished opinion).

[73] *See Rounds*, 807 F.3d at 1006.

5. <u>Dr. Lebeau</u>

Dr. Lebeau testified at the administrative hearing.[74] Because Dr. Lebeau was unable to review the medical record, Dr. Lebeau only testified about his knowledge and understanding about UP and its expected symptoms but did not opine about Plaintiff's functioning.

The ALJ gave great weight to Dr. Lebeau's testimony as to the general conditions and treatment of UP. Plaintiff argues that, because Dr. Lebeau did not review the record, no weight should have been given to Dr. Lebeau's testimony.

The ALJ did not error by relying on Dr. Lebeau's testimony about UP. Although Dr. Lebeau mistakenly referred to the wrong condition initially, Dr. Lebeau clarified that he was discussing UP. And while Dr. Lebeau was unaware of the medical records indicating that Plaintiff had an enlarged spleen and some clusters of mast cells, the ALJ was permitted to receive and consider Dr. Lebeau's testimony against the medical records.[75] The ALJ rationally found that the objective medical evidence revealed that Plaintiff did not suffer from the more severe systemic mastocytotis and that his symptoms were in line with UP for which the symptoms could be managed by treatment. Plaintiff fails to establish error by the ALJ considering Dr. Lebeau's testimony.

---

[74] AR 58-67.

[75] *See* HALLEX I-2-5-34 (permitting an ALJ to obtain testimony from a medical expert if the ALJ has a question "about the etiology or course of a disease").

## C. Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting Plaintiff's symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[76] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[77] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the medical evidence, Plaintiff's exaggeration of the extent of his UP symptoms, improvement with treatment, activities of daily living, and inconsistent work history.[78]

First, the ALJ discounted Plaintiff's symptom reports because he "repeatedly exaggerated the extent of his urticaria."[79] For example, the ALJ highlighted that although Plaintiff told a nurse in 2018 that he "has constant breakouts that are

---

[76] *Molina*, 674 F.3d at 1112.

[77] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

[78] AR 23-24.

[79] AR 23.

intensely itchy all over his body from his scalp down to his legs," the nurse only

observed a rash on his chest and abdomen.[80] The tendency to exaggerate or engage

in manipulative conduct during the process is a permissible reason to discount the

claimant's reported symptoms.[81] And the ALJ is permitted to weigh conflicting

evidence and the Court must uphold the ALJ's findings that are supported by

inferences reasonably drawn from the record.[82] Here, this cited exaggeration does

not constitute clear and convincing evidence to support a finding that Plaintiff

exaggerated the extent of his urticaria rashes. It is unclear whether Plaintiff was

complaining to the nurse that he had a large number of simultaneous breakouts all

over his body all the time (as the ALJ found) or rather single or multiple

simultaneous breakouts in more localized parts of his body with the locations of the

breakouts changing over time (as is reflected in the medical records).[83] Plaintiff

testified at the hearing to the latter—that he has simultaneous breakouts in

localized parts of his body with the locations of the breakouts changing every "week

---

[80] AR 677.

[81] *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

[82] *Molina*, 674 F.3d at 1111.

[83] *See, e.g.*, AR 363-64 (Aug. 2015: lesions on back and abdominal); AR 419-20 (Sept. 2015: faint urticaria on lower abdomen); AR 358-59 (Oct. 2015: lesions on right upper arm); AR 449-51 (March 2016: erythema patches on arms, back, and right foot); & AR 489 (Oct. 2016: plaques on forehead, check, and upper arm).

to two weeks depending on how bad it wants to go."[84] Accordingly, the ALJ's

finding that Plaintiff repeatedly exaggerated the extent of his urticaria rashes is

not supported by clear and convincing evidence. This error is harmless however as

the ALJ relied on two other grounds to discount Plaintiff's reported symptoms that

were supported by clear and convincing reasons.[85]

The ALJ also discounted Plaintiff's reported symptoms of constant diarrhea,

daily headaches, and being unable to do anything during the day, as being

inconsistent with the medical record. Symptom reports cannot be solely discounted

on the grounds that they were not fully corroborated by the objective medical

evidence.[86] However, medical evidence is a relevant factor in considering the

severity of the reported symptoms. [87] As discussed above, the ALJ highlighted that

the medical records reflected no gait abnormality or motor or sensory loss. Neither

the medical records nor supported medical opinions reflect that the reported

diarrhea, vomiting, or daily headaches, when treated, were significant enough to

---

[84] AR 41.

[85] *See Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error
was harmless where the ALJ provided one or more invalid reasons for disbelieving
a claimant's testimony, but also provided valid reasons that were supported by the
record.").

[86] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[87] *Id.*

impose functional limitations. Moreover, the medical records do not reflect that Plaintiff was in constant severe pain impacting his judgment or concentration. That Plaintiff's reported symptoms of diarrhea, headaches, and pain and fatigue (which purportedly contributed to Plaintiff being unable to do anything) were inconsistent with the medical record was a relevant factor for the ALJ to consider and his finding is supported by substantial evidence.

Next, the ALJ discounted Plaintiff's reported UP symptoms because Plaintiff had reported that the medication was helping.[88] That Plaintiff's digestive, nausea, and rash symptoms improved with prescribed medication is a rational finding supported by substantial evidence.[89] This was a clear and convincing reason to discount the severity of Plaintiff's reported symptoms.

The ALJ also discounted Plaintiff's symptom reports because they were inconsistent with his "high-functioning activities of daily living."[90] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[91] The ALJ highlighted that

---

[88] *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 599-600 (9th Cir. 1999) (considering evidence of improvement).

[89] *See* AR 437, 443, & 540.

[90] AR 24.

[91] *Molina*, 674 F.3d at 1113.

Plaintiff stated in his function report that he cares for children, performs his own personal care, makes simple meals, does dishes, vacuums, dusts, takes the dog out every day, drives, and shops in stores, but then at the hearing, Plaintiff testified that he does virtually nothing all day.[92] In order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding. These cited activities, which can be achieved in relatively short periods of time, as Plaintiff testified that he did, and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[93] Moreover, Plaintiff's brief comments in the Adult Function Report are not inconsistent with his testimony at the hearing. The ALJ also discounted Plaintiff's reported symptoms because Plaintiff donated plasma, which the ALJ found to be a physically demanding endeavor. But without more explanation or facts in the record as to Plaintiff's plasma donations, the simple fact that Plaintiff has donated plasma, presumably to earn money, is not a legitimate basis to serve as a clear and convincing reason to discount Plaintiff's symptom reports on this record.

Finally, the ALJ discounted Plaintiff's symptom reports because of his "inconsistent work history extending years before his main medical condition of

---

[92] AR 23, 44-57, & 274-81.

[93] *Molina*, 674 F.3d at 1112-13.

urticarial pigmentosa surfaced."[94] Evidence of a poor work history that suggests a

claimant is not motivated to work is a permissible reason to discredit a claimant's

claim that he is unable to work.[95] The Commissioner however does not dispute this

claimed error. Nonetheless, because the ALJ articulated two other supported

grounds for discounting Plaintiff's reported symptoms—that they were inconsistent

with the objective medical evidence and inconsistent with improvement with

treatment—the ALJ's decision to discount Plaintiff's reported symptoms is upheld

on this record.

In summary, Plaintiff fails to establish the ALJ consequentially erred by

discounting Plaintiff's symptom reports.

## D.     RFC: Plaintiff fails to establish error.

Plaintiff argues the ALJ failed to properly assess his limitations from his UP

and bilateral carpal tunnel syndrome into the light duty RFC, which contained no

manipulative, sensory, or restroom limitations. "[T]he ALJ is responsible for

translating and incorporating clinical findings into a succinct RFC."[96] However, a

---

[94] AR 24.

[95] *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); 20 C.F.R. § 404.1529

(work record can be considered in assessing reported symptoms); 20 C.F.R. § 416.929

(same).

[96] *Rounds*, 807 F.3d at 1006.

mere diagnosis of an impairment does not establish functional deficits.[97] No physician nor PA-C Womack recommended manipulative, sensory, or restroom limitations due to the diagnosed carpal tunnel syndrome and UP. Moreover, as the ALJ recognized, the record generally shows that Plaintiff had no motor or sensory loss.[98] Finally, there is no indication in the record that Plaintiff's diarrhea was of an urgent nature that required restroom breaks beyond normal restroom breaks. Accordingly, the RFC properly accounted for the functional limitations supported by the record.

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

---

[97] *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

[98] *See, e.g.*, AR 361 (noting normal sensation to light touch in upper extremities, 5/5 manual muscle testing, except for give-way weakness on the right, and positive Tinel's test at the right wrist); AR 466 (no sensory or motor deficits), AR 563 (normal range of motion, no edema, normal reflexes, and no sensory deficit); & AR 658 & 665 (normal range of motion of extremities and intact and symmetric neurology).

4.	The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order,

provide copies to all counsel, and close the file.

**DATED** this 11th  day of March 2020.


_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge